**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Edward L. OSBORNE, Defendant–Appellant.**

**No. 90–6597.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 6, 1991.

Decided and Filed Nov. 4, 1991.

Joe B. Brown, U.S. Atty., William Cohen (Briefed), Robert C. Watson (Argued), Asst. U.S. Attys., Office of the U.S. Atty., Nashville, Tenn., for plaintiff-appellee.

Deborah S. Swettenam, Asst. Federal Public Defender (Argued & Briefed), Federal Public Defender's Office, Nashville, Tenn., for defendant-appellant.

Before MARTIN and NELSON, Circuit Judges, and WELLFORD, Senior Circuit Judge.

WELLFORD, Senior Circuit Judge.

Defendant, Edward L. Osborne, pleaded guilty to count two of an indictment charging him with knowingly executing a

scheme to defraud a federally insured bank in Nashville, Tennessee. The plea was documented in a formal written agreement under Rule 11 of the Rules of Criminal Procedure, wherein defendant stated that his attorney advised him that the sentencing guidelines range in his case "should be from 21 to 27 months." He conceded that this was "simply [his] attorney's estimate," and he acknowledged that a probation officer would prepare a presentence report for the district court that would include his or her own estimation of a guidelines range. Defendant acknowledged further in the plea agreement that no one had "told me what sentence I will receive."

The appeal by Osborne relates to the correctness of his sentence of 57 months imprisonment, a $50 special assessment, and three years supervised release. The prosecution agreed to take no position on the issue of the two point downgrade for acceptance of responsibility, and recommended a sentence at the low end of the applicable guideline range. The presentence report recommended a downward adjustment for acceptance of responsibility and a 24 point criminal history determination, resulting in a proposed range of 27 to 33 months. The district court made an upward departure in effecting the 57 month sentence at issue.

Osborne arranged for two wire transfers of funds from the accounts of one Christopher A. Allen. When the money arrived, defendant went to the bank, falsely identified himself as Christopher Allen, and appropriated the funds. Osborne also used credit cards of Christopher Allen, making substantial charges for his own benefit. Also, using Allen's identity, defendant purchased a Nissan pickup truck, worth about $12,000. Upon discovering that the sale had been fraudulent, the dealer notified the police, and the defendant was thereafter arrested.

Defendant had obtained personal data on Christopher A. Allen, including his birth date, social security number, Tennessee driver's license number, place of employment, and bank name. He then obtained a Louisiana driver's license bearing Allen's name, but containing defendant's photograph. Following his arrest, Osborne admitted to a federal agent that he had used the identity of Allen and had made the endorsements as Allen on the documents involved in this case.

## I. ACCEPTANCE OF RESPONSIBILITY

■ Defendant maintains that because the 1990 sentencing guideline application Notes have deleted the phrase "should not be disturbed unless it is without foundation" from a Note addressing the appellate court's standard of review, we now have greater leeway in reviewing a determination of acceptance of responsibility. We are not persuaded.

It has heretofore been settled that appellate review of the sentencing guidelines' factfinding is governed by the clearly erroneous standard. The guidelines in effect at the time of a criminal's conviction are applicable, see 18 U.S.C. § 3553(a)(5), but we are satisfied that the standard of review has not changed by this minor alteration in the application Notes. 18 U.S.C. § 3742(e) (1991) states in pertinent part:

> The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to these facts.

Defendant challenges the district court's finding that he did not accept responsibility under the guidelines; we will not overturn this factual determination in the sentencing process unless its finding was clearly erroneous.

■ The district court considers:
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(2) that is *in effect on the date the defendant is sentenced;*
> ....

18 U.S.C. § 3553(a)(5) (1991) (emphasis added). Defendant was sentenced on Decem-

ber 5, 1990. The 1990 Guidelines, therefore, are applicable in this case.

U.S.S.G. § 3E1.1 provides:

(a) If the defendant *clearly demonstrates* a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.

....

(c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

(Emphasis added). The sentencing court may also consider:

(a) *voluntary* termination or withdrawal from criminal conduct or associations;

(b) *voluntary* payment of restitution prior to adjudication of guilt;

(c) *voluntary* and truthful admission to activities of involvement in the offense and related conduct;

(d) *voluntary* surrender ...;

....

(g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

Application Note 1 (emphasis added). Since "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility ... the determination of the sentencing judge is entitled to great deference on review." Application Note 5. The guidelines also state:

Entry of a plea of guilty prior to the commencement of trial combined with truthful admission of involvement in the offense and related conduct will constitute significant evidence of acceptance of responsibility for purposes of this section. However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility.

Application Note 3. Defendant argues that his guilty plea, his oral admission of guilt to be a federal agent, and his written statement to his probation officer should not be deemed to be outweighed by factors relied upon by the district court. We conclude, however, that the district court's finding was not clearly erroneous, and we AF-FIRM the acceptance of responsibility determination.

The district court based its finding on this issue on the following factors:

(1) his entire criminal history indicates no acceptance of responsibility;

(2) the typewritten statement filed with the probation officer by Osborne was not signed by defendant;

(3) defendant did not voluntarily admit his guilt;

(4) he did not try to make restitution;

(5) Osborne showed no real sign of "changing his ways."

In addition, the district court was aware that defendant was on probation for passing worthless checks at the time of the indictment offenses, and that his significant history reflected Osborne to be a "con man."

## II. DEPARTURE

█ The district court departed in this case because it was convinced that the category in which Osborne's criminal history was placed failed significantly to reflect the seriousness of the defendant's extensive past criminal conduct and the likelihood that the defendant would commit further crimes. It found that the criminal history score applicable to defendant was 24, placing defendant in category VI, which applies to criminal history scores of 13 points or more. The district court determined that because the criminal history score of 24 was so high, category VI did not adequately reflect the seriousness of defendant's persistent criminal history as a "con man." The court then noted that each criminal history category after category II contained three criminal history category points and that, similarly, category VI and all categories above category VI would also contain a spread of 3 criminal history points. Using this analysis, the district court determined that the defendant's 24 criminal history points should be considered to fall into a hypothetical category IX (bringing about a 3 level increase in the defendant's criminal history range). This analysis resulted in an offense level of 16, a criminal history category of VI, or a

guideline range of 46–57 months. Based on this rationale, Judge Morton sentenced the defendant to the high limit of 57 months incarceration.

Defendant does not essentially challenge the district court's decision to make an upward departure from the guidelines in determining his sentence. Rather, he argues that the court improperly calculated the sentencing range. This improper calculation, defendant argues, resulted in a sentence that is excessive and unreasonable under the guidelines structure. Defendant argues that the Sentencing Commission intended courts to increase offense levels, rather than criminal history categories, moving vertically on the table instead of horizontally. He asserts that the guidelines structure "seems to indicate" that the Commission intended that the seriousness of an offense, as defined by the offense level, would carry more weight in increasing a defendant's sentence.

Congress has authorized departures from the sentencing ranges announced in the guidelines only where "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b). *See United States v. Brewer*, 899 F.2d 503 (6th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990). In *United States v. Joan*, 883 F.2d 491 (6th Cir.1989), this court adopted a three part test in determining whether an upward departure is warranted. First, the court reviews as a question of law the circumstances stated to support the departure to determine if they are sufficiently unusual to warrant departure. Second, this court must determine whether the factual findings upon which the district court based its conclusion that the particular circumstances warranted departure actually exist. Here, the court found that defendant has a long criminal history beginning at age sixteen. His criminal history was replete with convictions for fraudulent acts, including false pretenses, forgery, theft, and passing worthless checks. The instant offense was committed while defendant was on probation for another fraudu-

lent act. We are not persuaded that the district court erred in concluding that these circumstances warranted departure.

We must also measure the degree or range of departure by a standard of reasonableness. Thus, "appellate review must occur with the full awareness of, and respect for, the trier's superior 'feel' for the case," *Joan*, 883 F.2d at 494 (quoting *United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir.), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989)), but within the context of the guidelines' emphasis on uniformity.

Here, the district court modeled its method of departure on the example approved in *United States v. Dycus*, 912 F.2d 466 (6th Cir., 1990) (WESTLAW, federal library, tab database). In *Dycus*, the defendant had a criminal history score of 19, and his category was VI (13 or more). The district court considered hypothetically a criminal history category VIII into which a criminal history score of 19 would fall. The district court in *Dycus* determined that a departure was appropriate and sentenced Dycus to 46 months imprisonment, in comparison to the normal guidelines range of 24 to 30 months. We found in *Dycus* that the district court "departed modestly in a structured way."

We thus approved a sentence almost double the lowest level of the applicable guideline range in *Dycus*, citing as authority *United States v. Belanger*, 892 F.2d 473 (6th Cir.1989) (approving the upward departure double the mean guideline range based on a criminal history score of 29). We concluded in *Dycus:*

> In *Belanger*, we rejected Dycus's argument that the Commission intended Category VI to include all offenders with "13 or more" criminal history points. In holding that the district court appropriately relied on the defendant's extremely high criminal history score in departing from the guidelines, we stated:

> "Appellant argues in response that the Guidelines already contemplate his high score by placing in category VI all persons with a criminal history score of '13

or more.' He interprets 'or more' to mean that, regardless of a defendant's score, the range set by that category for someone of his base offense level sets the maximum allowable sentence. However, appellant's analysis is flawed in that it is directly contradicted by the Commissioner's statement that departure and sentencing above the range is allowable if the sentencing court finds the defendant's criminal history extreme enough to justify departure."

[*Belanger,* ] 892 F.2d at 475–76 n. 1 ... [W]e approve the district court's finding that Dycus's criminal history was "extreme enough to justify departure,"....

*Dycus,* No. 89–6594 at *9–10.

The departure in the instant case also results in a sentence approximately double the mean guideline range. The Sentencing Commission recognizes that a high or extreme criminal record may justify departure:

> The Commission contemplates that there may, on occasion, be a case of an egregious, serious criminal record in which even the guideline range for a Category VI criminal history is not adequate to reflect the seriousness of the defendant's criminal history. In such a case, a decision above the guideline range for a defendant with a Category VI criminal history may be warranted.

*Dycus,* No. 89–6594 at *7 (quoting U.S.S.G. § 4A1.3).

A criminal history score in this case nearly double the score indicated in category VI may be deemed sufficiently unusual to warrant a departure. *See Belanger,* 892 F.2d at 475. The district court here has made adequate findings as to the particular circumstances applicable here and the repeated instances of construing criminal conduct even while Osborne was on probation. The *Belanger* court determined:

> The last consideration we must give, having found that departure was appropriate, is whether the 24–month sentence was "reasonable." In this regard, "the trial judge's determination must be given great deference, and, unless there is little or no basis for the trial court's action

in departing, it must be upheld" if the trial court has articulated a reason for its departure. The court should consider the defendant's past criminal conduct, the likelihood of recidivism, prior conduct not resulting in conviction, whether the sentence will deter future misconduct, and the necessity of isolating the defendant from society.

*Belanger,* 892 F.2d at 476.

We are persuaded that in this case we must give deference to the district court's determination and that it has given consideration to the same factors mentioned in *Belanger* and in *Dycus.* *See also United States v. Christoph,* 904 F.2d 1036, 1042 (6th Cir.1990).

We, accordingly, AFFIRM the decision of the district court.

DAVID A. NELSON, Circuit Judge, dissenting.

The defendant has an extensive record as a small-time paperhanger and thief, and it is this record that seems to have been the most significant factor in the district court's decision not to give the defendant credit for acceptance of responsibility, which would have lowered his offense level from 11 to 9. On the basis of the same record, the district court determined that the highest criminal history category specified by the sentencing guidelines (Category VI) did not adequately reflect the seriousness of the defendant's past criminal conduct. The latter determination led the court to depart from the prescribed guideline range by (a) placing the defendant in a fictitious criminal history category ("Category IX") which the court developed by extrapolation, (b) making an educated guess as to what the guideline range would be at the intersection of Offense Level 11 and Criminal History Category IX, and (c) imposing a sentence at the top of that guesstimated range.

Under the particular facts presented here, I believe it was inappropriate to use the defendant's criminal history as a basis both for denying the acceptance of responsibility credit and for departing upward from the sentence range indicated by the

guidelines. I do not quarrel with the district court's conclusion that an upward departure was appropriate, and neither do I take issue with the defendant having been placed in "Category IX." I think it was unreasonable, however, both to place the defendant in this imaginary category because of his prior record and to withhold the acceptance of responsibility credit for essentially the same reason.

The methodology followed by the district court would have produced an appropriate result, I believe, if the court had simply used an offense level of 9. Under this approach, the court would have ascertained from the sentencing table that the guideline range for a defendant in Criminal History Category VI with an offense level of 9 is imprisonment for 27–33 months. The court would then have found that the offense level that produces the same sentence range for a defendant whose criminal history category is III rather than VI is Offense Level 14. Finally, the court would have determined from the table that the sentence range for an individual with an offense level of 14 and a criminal history category three brackets above Category III is imprisonment for 37–46 months. It seems to me that this is the highest range that can be justified in the case at bar, given the structure of the sentencing table, and I would therefore remand the case for imposition of a sentence of imprisonment for not more than 46 months.