**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joseph Everett THOMAS,**
**Defendant–Appellant.**

**Nos. 93–5514, 93–5515.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 2, 1993.

Decided May 23, 1994.

David P. Grise, Asst. U.S. Atty. (argued and briefed) and Karen K. Caldwell, U.S. Atty., Office of the U.S. Atty., Lexington, KY, for plaintiff-appellee.

Derek G. Gordon (argued and briefed), Anggelis, Philpot, Gordon, & Simpson, Lexington, KY, for defendant-appellant.

Before: MERRITT, Chief Judge, and NELSON and BOGGS, Circuit Judges.

MERRITT, Chief Judge.

Defendant Joseph Everett Thomas appeals from 60–month concurrent sentences imposed on him after he pled guilty to three counts of bank fraud. Although under the federal sentencing guidelines the defendant's range was 24 to 30 months, the district court determined that a sentence in this range would not adequately reflect the defendant's extensive prior criminal record. The court departed upward and imposed 60–month sentences. The sole issue on appeal is the propriety of the district court's decision to depart.

The defendant's primary argument is that the district court failed to provide an adequate statement of reasons for its upward departure and failed to employ a proper methodology to determine the extent of the departure. He also argues that grounds did not exist for the departure, that the departure was unreasonable, and that the court did not give him proper notice of the possibility of departure. We hold that the upward departure was in all respects proper, and therefore affirm the defendant's sentences.

## I.

Thomas pled guilty to three counts of bank fraud relating to schemes to defraud financial institutions in Lexington and Louisville, Kentucky. The defendant opened bank accounts under false names, deposited fraudulent checks, and then withdrew the money before the financial institutions discovered that the checks were invalid. The total loss to the institutions was approximately $30,000.

The Probation Office prepared a Presentence Investigation Report (PSI) which documented 36 "adult criminal convictions," most for larceny, writing bad checks, and forgery. It indicated that the defendant had spent a majority of his adult life incarcerated, with his criminal activity stretching back as far as 1974. Neither the government nor the de-

fendant objected to the PSI's calculation of a base offense level of 10 and Criminal History Category (CHC) VI, which corresponded to a guideline range of 24 to 30 months. The PSI indicated that the defendant's extensive criminal history, which resulted in 43 criminal history points, might warrant an upward departure:

> Thomas has been involved with this type of criminal behavior since the beginning of his adult life. His guideline range does not accurately reflect his past record, due to the applicable criminal history category VI. Had there been an applicable level for 43 criminal history points, the guideline range would have possibly been significantly higher....

PSI ¶ 94–95 (citing U.S.S.G. § 4A1.3 (which provides for departures based on extensive past criminal conduct)).

At sentencing, the District Court heard and ruled upon four objections by the defendant to the PSI, none of which included an objection to the possibility of an upward departure. When imposing the sentence above the guideline range, the court relied upon the PSI and provided the following reasoning:

> Indeed, he has been in trouble for nearly 20 years of his 34 years. I refer in that regard to the defendant's criminal history, which is contained in paragraphs 25 through 65, pages 6–22 of the presentence report. Many times I recount for the sake of the record each and every conviction or charge. I will not do that here. But I do incorporate as part of these proceedings those paragraphs 25 through 65, pages 6–22 of the presentence report as if fully set out herein. One of the most extensive past criminal histories that I have ever looked at. Not much violence, if any, contained in this vast array of previous—yes, there is an assault case.... But generally it has been larceny, bad checks and forgery. And which is serious enough. And lots of times whenever you have the first bad check [the Judge] is inclined to give him probation and go on. And, of course, he has been before judges that have done that. And, of course, he just kept coming back.

I cannot believe that he has now seen the light. He says that he's taken some wrong turns—a wrong turn. He has taken wrong turns just about throughout his adult life.

\* \* \* \* \* \*

His criminal history greatly exceeds level six. And when I consider that fact and the fact of the nature of these offenses and the amounts involved which he would have no way of paying back, I am not inclined to sentence within the guidelines. I rarely sentence above the guidelines, but this is one case where I feel that I am compelled to sentence above the guidelines for these reasons.

The court then imposed the 60–month sentence. At the close of the sentence hearing, the Assistant United States Attorney interjected:

May I put a statement on the record here? The 60–month sentence you imposed would be the equivalent of a criminal history six and offense level 17. I just wanted to make clear for the record that you felt that increasing the level to 17 adequately reflected an appropriate increase on the basis of his criminal history.

The court responded "That is indeed correct."

## II.

■ The Court reviews *de novo* the question of whether a sentence was imposed as a result of an incorrect application of the guidelines, as Thomas alleges. 18 U.S.C. § 3742(e). However, absent plain error, this Court will not address claims of alleged misapplication of the guidelines unless the defendant first raised the claim before the district court. *United States v. Fountain*, 2 F.3d 656, 669–70 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 608, 126 L.Ed.2d 573 (1993). Thomas did not object to the PSI's statement that an upward departure might be warranted, nor did he object at sentencing when the district court announced its decision to depart. We therefore review only for plain error.

■ The Sentencing Guidelines require that a sentence be imposed within the applicable guideline range unless "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." 18 U.S.C. § 3553(b). The Court employs a three-prong test to determine whether a departure was warranted. First, we review *de novo* the circumstances surrounding the departure to determine whether they are sufficiently unusual to warrant divergence from the guidelines. Second, we evaluate whether the circumstances upon which the district court based the departure actually exist in the case. In reviewing the trial court's factfinding, we reverse only for clear error. Third, once we have assured ourselves that the circumstances are proper for departure and that those circumstances enjoy support in the record, we assess the degree or range of departure for reasonableness. *United States v. Joan,* 883 F.2d 491, 494 (6th Cir.1989); *United States v. Gray,* 982 F.2d 1020, 1022 (6th Cir.1993)(citations omitted).

### A.

■ The district court based its decision to depart primarily upon the defendant's extensive criminal history, specifically the inordinately high criminal history score of 43. That score is more than triple the 13–point threshold for Category VI, the highest criminal history category available under the guidelines. A score greatly exceeding the 13–point threshold is sufficiently unusual to warrant an upward departure. *United States v. Belanger,* 892 F.2d 473 (6th Cir.1989)(ruling that 29 points was a valid basis for an upward departure), *cited in United States v. Osborne,* 948 F.2d 210, 214 (6th Cir.1991)(ruling that 24 criminal history points constituted grounds for upward departure). Section 4A1.3 of the Guidelines also clearly permits a court to premise an upward departure on an extremely high criminal history score.[1] Thomas's score of 43, one of the

---

1. That section of the Guidelines provides in part:

The Commission contemplates that there may, on occasion, be a case of an egregious, serious

highest we could find in reported cases, is clearly sufficiently unusual to warrant departure from the guidelines.

■ The district court also recognized Thomas's recidivism rate as problematic, noting that he had received lenient treatment in the past, and "he just kept coming back." An unusually high likelihood of recidivism is also a valid factor upon which to base an upward departure. U.S.S.G. § 4A1.3, comment. (backg'd). Both the criminal history score and the high likelihood of recidivism are valid, legal reasons for an upward departure from the guidelines and satisfy the first prong of our test.

As to the second prong, there appears to be no dispute at this point in the proceedings that either the criminal history score or the basis for the court's finding regarding recidivism is factually erroneous. Our own review of the record finds adequate support for both of these findings. Consequently, the first two prongs of our three-part test are satisfied.

### B.

■ The third step, an evaluation of the direction and degree of departure, is measured by the standard of reasonableness. Reasonableness is determined with due regard for "the factors to be considered in imposing a sentence," and "the reasons for the imposition of the particular sentence, as stated by the district court." 18 U.S.C. § 3742(e)(3). The sentencing court's assessment of the case must be given deference, and unless there is little or no basis for the court's actions, the sentence should be upheld. *Joan,* 883 F.2d at 494. Reasonableness is a flexible standard which "involves what is quintessentially a judgment call.... [A]ppellate review must occur with full awareness of, and respect for, the trier's superior 'feel' for the case. We will not lightly disturb decisions to depart, or not, or related decisions implicating degrees of departure." *Id.* (quoting *United States v. Diaz–Villafane,* 874 F.2d 43, 49 (1st Cir.),

*cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989)).

■ Factors to consider when reviewing for reasonableness include the seriousness of the defendant's past criminal conduct, the likeliness of recidivism, prior similar adult conduct not resulting in criminal convictions, previous lenient sentences for offenses, whether the sentence will have a deterrence on future criminal conduct, the necessity of isolating the defendant from the community and the length of time necessary to achieve rehabilitation, if rehabilitation is possible. *Joan,* 883 F.2d at 496. After a review of the record before us, and giving deference to Judge Wilhoit's familiarity and "feel" for the case, we conclude that the degree of the upward departure, 30 months above the defendant's original guideline range, was reasonable. The unusually extensive criminal record of the defendant, his record of recidivism after countless incarcerations, previous lenient sentences for similar criminal activity, and his 18–year record of almost constant criminal activity and incarceration demonstrate to us his persistent determination to commit crimes. All of these factors indicate to us the reasonableness and necessity of 2½ years of additional incarceration which the upward departure provides.

As part of the reasonableness requirement, Thomas challenges the district court's method of calculating the departure. Thomas argues that the district court was required to consider and reject each of the six intermediate gridblocks between the original guideline range (offense level 10, criminal history category VI; 24–30 months) and the range in which the actual sentence fell (offense level 17, criminal history category VI; 51–63 months). We reject such a mechanistic approach to departures.

■ When a sentencing court concludes that departure is proper, it must provide a "specific reason" supporting its decision to depart, which is satisfied by a short, written or reasoned statement from the bench identi-

---

criminal record in which even the guideline range for Criminal History Category VI is not adequate to reflect the seriousness of the defendant's criminal history. In such a case, a

departure above the guideline range for a defendant with Criminal History Category VI may be warranted.
U.S.S.G. § 4A1.3, p.s.

fying the aggravating factors and the court's reasons for connecting them to permissible grounds for departure. 18 U.S.C. § 3553(c)(2); *United States v. Feinman*, 930 F.2d 495, 501 (6th Cir.1991). The court's statement must be more than conclusory; it must identify the specific reasons why the guideline range is inadequate and underrepresents the defendant's criminal history. *United States v. Kennedy*, 893 F.2d 825, 828 (6th Cir.1990).

▉ Ordinarily when departing from the Guidelines because a particular criminal history category is inadequate, the court must look to the next higher criminal history category, and must use that range as a reference before otherwise departing from the Guidelines. *Feinman*, 930 F.2d at 501 (citing *Kennedy*, 893 F.2d at 829). In a case such as the one before us, however, when criminal history category VI is inadequate, there is no "next higher criminal history category" for the sentencing court to use as a reference. The Guidelines furnish the sentencing court with some instruction in this situation:

> Where a court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, *the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.*

U.S.S.G. § 4A1.3, p.s. (Nov. 1, 1992) (emphasis added). Expressed another way, when the court cannot move horizontally across the guideline grid because there are no criminal history categories higher than VI, it should move vertically down the offense level axis until it locates a range which it deems appropriate to the facts of the case.[2]

▉ In this case, the defendant had a base offense level of 10 and CHC VI. The sentence imposed by the district court corresponded with an offense level of 17 and CHC VI. Reading § 4A1.3 and the "specific reason" requirement together, we believe that the district court's upward departure in this

case may be upheld if the court has provided a short clear statement from the bench explaining (1) what aggravating circumstances existed which were not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines; and (2) why the 60-month sentence (in the range dictated by offense level 17) is the appropriate sentence given the facts of this case.

First, the district court clearly articulated the aggravating circumstances which warranted an upward departure, as discussed in Section II.A. of this opinion. Second, although the district court could have been more explicit in rejecting lesser terms of incarceration as provided by offense levels 11–16, we are satisfied that the record demonstrates that the district court adequately considered and rejected those lesser terms before arriving at its ultimate conclusion that 60 months was the appropriate sentence for defendant Thomas.

▉ Neither the Guidelines nor the law of this circuit require the district court to provide a mechanistic recitation of its rejection of the intervening, lower guideline ranges. Section 4A1.3 directly addresses the proper procedure the court must follow in imposing an upward departure "beyond" Criminal History Category VI. It instructs the sentencing court to "structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." We read this language to require a court to continue moving down offense-level ranges only until it finds a range which would provide an appropriate sentence for the defendant, but no further. We do not read this to require the court to move only one level, or to explain its rejection of each and every intervening level. The language indicates quite clearly that the court should continue to consider ranges "until it finds" an appropriate sentence for the defendant before it, but nothing in § 4A1.3 calls for a more detailed, gridblock-by-gridblock approach advocated by the defendant.

**2.** Prior to a November 1, 1992 amendment to § 4A1.3, the guidelines were silent as to the

appropriate methodology required for upward departures from Criminal History Category VI.

Our interpretation of § 4A1.3 is consistent with a recent case before this court, *United States v. Carr*, 5 F.3d 986 (6th Cir.1993). In *Carr*, the sentencing court determined that Criminal History Category VI did not adequately represent Carr's criminal history and chances of recidivism. Contrary to § 4A1.3, the district court undertook a complex calculation to produce hypothetical criminal history categories beyond CHC VI, placing the defendant in criminal history "category IX" which the court determined would have a hypothetical range of 78–92 months. It then sentenced the defendant to a term of 90 months. *Id.* at 993–94.

This Court had accepted such a methodology for calculating upward departures[3] until November, 1992, when the Sentencing Commission amended U.S.S.G. § 4A1.3 to require the court to consider sentencing ranges along the vertical (offense level) axis. Based on this amendment, the *Carr* Court remanded for resentencing. Explaining the methodology of § 4A1.3, the appellate court found that the 90–month sentence imposed on the defendant corresponded to CHC VI and offense level 21. This Court explained that if the sentencing court on remand were again to impose a 90–month sentence, § 4A1.3 would require that court "to demonstrate why it found the sentence imposed by each intervening level to be too lenient." *Id.* at 994 (citing *United States v. Lassiter*, 929 F.2d 267, 270 (6th Cir.1991)).

■ We do not believe that *Carr*'s interpretation of U.S.S.G. § 4A1.3 requires a sentencing court to explain formalistically, gridblock-by-gridblock, why each intervening range is inappropriate. First, *Carr*'s reliance on *Lassiter* is somewhat problematic, since *Lassiter* involved movement along the horizontal axis, allowing the sentencing court to relate the extent of the departure to the guideline criteria for criminal history categories. In *United States v. Lassiter*, 929 F.2d 267 (6th Cir.1991), the sentencing court departed upward by imposing a sentence in CHC VI, rather than a sentence in the guideline range for CHC III. *Id.* at 269. We held in that case that the sentencing court must examine the next higher criminal history category. If it departs beyond that, it must demonstrate with more than a conclusory set of reasons or statements why the sentence required by the next greater category would be too lenient. *Id.* at 270–71. Because the sentencing court had not done so, we remanded for resentencing. In *Lassiter*, it was logical to require the sentencing court to provide such an explanation, since the court was moving along the horizontal axis based on factors *related* to that axis. In such cases, the sentencing court has objective criteria upon which to base its decision and upon which appellate courts may meaningfully review the departure. In contrast, *Carr* and the instant case require a sentencing court to move vertically down the offense level axis based on factors *unrelated* to offense level.

Second, were we to interpret this one sentence in *Carr* to require the sentencing court to explain its rejection of each intervening offense level gridblock-by-gridblock, such a holding would require no more than a recitation by the sentencing judge that "I have considered level 11, level 12, level 13, level 14, level 15 and level 16, and I find none of them appropriate to the facts and circumstances surrounding this case." The gridblocks are not a color chart, to be matched with the defendant's eyes. Since there are no such objective criteria for the court to employ to move down offense levels based on criminal history factors, we do not understand what kind of meaningful explanation, over and above the example recited above, the district court could provide. Such a rigid, formalistic and essentially meaningless exercise to determine a sentence is not required by the guidelines, nor is it necessary to the fair and impartial administration of criminal justice.

The approach required of the sentencing court when departing beyond Criminal History Category VI, as we see it, is to consider carefully all of the facts and circumstances surrounding the case which affect the departure, and from them determine an appropriate sentence for the particular defendant. Section 4A1.3 and *Carr* constrain the court

---

**3.** *See, e.g., United States v. Osborne,* 948 F.2d 210 (6th Cir.1991).

only to the extent that it must use the offense level ranges as a reference, and depart from them no further than is required to reach a gridblock that contains a reasonable sentence for the defendant in the case. This methodology provides some structure and uniformity among departures "beyond" Criminal History Category VI, while at the same time relying on the sentencing court's sentencing expertise and its familiarity with the case to impose an appropriate, reasonable sentence. This methodology should not be interpreted to give sentencing courts unlimited discretion in imposing sentences which include CHC VI departures. The reasonableness requirement and appellate review of the departure will protect against extreme departures and will insure a measure of uniformity among departures.

Review of Judge Wilhoit's explanation for the upward departure in this case indicates that he complied with *Carr* and § 4A1.3. The court noted the defendant's rate of recidivism, leniency in sentencing by past courts, and the magnitude of defendant's criminal history. Based on these factors, the court imposed a term of 60 months imprisonment, equivalent to offense level 17, that "adequately reflected an appropriate increase on the basis of his criminal history." The court's reasoning clearly demonstrates the necessity and reasonableness of the departure, and implicitly demonstrates the court's rejection of lesser terms of incarceration.

The district court relied upon proper circumstances when it chose to depart from defendant Thomas's guideline range. The 30-month departure was a reasonable one, and the district court properly specified its reasoning when it imposed the sentences.

### III.

■ Finally, the defendant argues that he was not given proper notice of the potential for an upward departure. Thomas is certainly correct that he is entitled to reasonable notice that the court is contemplating an upward departure. *Burns v. United States,* 501 U.S. 129, 137–38, 111 S.Ct. 2182, 2187, 115 L.Ed.2d 123 (1991). In *Burns,* the Supreme Court reversed the defendant's sentence on due process grounds

after the sentencing court had departed upward *sua sponte.* The Court, however, contrasted *Burns* with an "ordinary case" in which the PSI or a Government recommendation puts the defendant on notice. *Id.* at 133–37, 111 S.Ct. at 2185–86. This Court has also held that the PSI satisfies the notice requirement for upward departures as long as it specifically identifies the facts or information that may warrant such a departure. *United States v. Anders,* 899 F.2d 570, 576–77 (6th Cir.1990). Thomas's PSI specifically stated that an upward departure might be at issue because of the defendant's inordinately high criminal history score. On that basis, we find that Thomas was properly on notice that a departure might be at issue.

For the foregoing reasons, we AFFIRM the defendant's sentences.