61 F.3d 904
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Virgil Louis HENDERSON, Defendant-Appellant.
 No. 94-6431.
 United States Court of Appeals, Sixth Circuit.
 July 18, 1995.
 
 Before: LIVELY, NELSON, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Virgil Henderson challenges his 110 month sentence imposed for his convictions for extortion, 18 U.S.C. Sec. 1951, and mailing a threatening communication, 18 U.S.C. Sec. 876. Henderson contends that the district court erred in: (1) denying a downward adjustment for acceptance of responsibility; (2) departing upward six levels; and (3) permitting one of the victims to testify at the sentencing hearing that a ten year sentence would be appropriate. For the reasons stated herein, we affirm the sentence imposed.
 
 I.
 
 2
 On February 28, 1994, Sandra Meadows of Memphis, Tennessee received an extortion note at her home. The note threatened that if Mrs. Meadows did not leave $250,000.00 at a drop-off point in Memphis, the writer of the note would kill Mrs. Meadows and her 18 month-old daughter.[1] A map was attached to the note, indicating the location for the drop-off. Police officers dropped off a fake money package at the requested location and set up surveillance. No one, however, picked up the package.
 
 
 3
 Two months later, Mrs. Meadows received another extortion note by mail. This note threatened that she would be raped and her child kidnapped and "sold" unless Mrs. Meadows left $250,000.00 at the same location as before.[2] Once again the officers placed the fake money bag at the location. This time, however, Henderson appeared, approached the bag and picked it up. After a brief chase, the FBI arrested Henderson, who police later determined to be a former employee of Mr. Meadows's company.
 
 
 4
 Later, Henderson pleaded guilty to the indictment charging extortion and mailing a threatening communication. When the probation officer interviewed Henderson for purposes of the presentence report, Henderson provided false information about his family. According to Henderson, his mother died in a car accident in the 1970's and he has no siblings. The probation officer later determined, however, that Henderson's mother was still living and that he had one sister. Henderson also refused to sign a release of information for the officer to verify Henderson's employment, financial and military service information. The officer recommended, in light of this conduct, that the district court increase the offense level by two points for obstruction of justice.
 
 
 5
 At sentencing, the district court stated that it would not impose an enhancement for obstruction of justice. The court held, however, that the conduct in question indicated a failure to accept responsibility and denied defendant's request for a reduction under Sec. 3E1.1(a) and (b). The district court then determined that a six-level upward departure was warranted, thereby increasing the offense level from a 22 to a 28. The court reached this conclusion based on the following: (1) two points for the threatened use of an accomplice; (2) two points for the threat to kidnap a young child; (3) one point for extreme emotional harm and intense fear, USSG Sec. 5K2.3; and (4) one point for multiple victims. Based on an offense level of 28, the court sentenced Henderson to a total of 110 months in prison.
 
 II.
 
 6
 A) Acceptance of Responsibility.
 
 
 7
 Henderson contends that the district court misapplied the Guidelines when it determined that defendant's conduct of lying to the probation officer and refusing to sign a release of information justified denying defendant a reduction in sentence for acceptance of responsibility, USSG Sec. 3E1.1.
 
 
 8
 The defendant bears the burden of proving his acceptance of responsibility by a preponderance of the evidence. United States v. Moored, 997 F.2d 139, 145 (6th Cir.1993); United States v. Morrison, 983 F.2d 730, 733 (6th Cir.1993). As the district court's determination in regard to this element is generally a question of fact, this court will not overturn the decision unless clearly erroneous. Morrison, 983 F.2d at 732. Indeed, note five to USSG Sec. 3E1.1(a) provides that since the district court is in the "unique position to evaluate a defendant's acceptance of responsibility, the determination of the sentencing judge is entitled to great deference on review." USSG Sec. 3E.1.1(a), comment (n. 5). Questions regarding an application of the guideline to a set of facts, however, are subject to de novo review. Id.
 
 
 9
 The entry of a guilty plea, combined with a defendant's truthful admission of involvement in the offense and related conduct, "constitute[s] significant evidence of acceptance of responsibility.... However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." USSG Sec. 3E.1.1, comment (n. 3). Such is the case here. While it is true that Henderson pleaded guilty and seemingly answered truthfully about his offense, his conduct of lying and refusing to provide employment, financial and military information to the officer is inconsistent with an acceptance of responsibility. Both hampered the probation officer's (and, therefore, the court's) ability to gather information for sentencing and both, therefore, negate a finding of acceptance of responsibility. See United States v. DeFelippis, 950 F.2d 444, 447 (7th Cir.1991) (denying defendant reduction for acceptance of responsibility where defendant lied to probation officer on non-material matters); United States v. Cross, 900 F.2d 66, 70 (6th Cir.1990) (denying reduction under Sec. 3E1.1 based, in part, on defendant's failure to sign release form, as defendant "did not provide financial information that was necessary for the court to discharge its responsibilities."). Therefore, the district court did not err in denying Henderson a reduction for acceptance of responsibility.
 
 
 10
 B) Upward Departure.
 
 
 11
 Henderson contends that the district court's upward departure represents a failure to adhere to the policy statement of Sec. 5K2.0, which provides:
 
 
 12
 Under 18 U.S.C. Sec. 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, it the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...."
 
 
 13
 USSG Sec. 5K2.0. As defendant correctly points out, the commentary to this section states that "[i]n the absence of a characteristic or circumstances that distinguishes a case as sufficiently atypical [from the heartland cases] to warrant a sentence different from that called for under the guidelines, a sentence outside the guideline range is not authorized." He contends that none of the factors relied on by the district court is "in excess of or beyond the realm of that which is ordinarily involved in the offense of threatened extortion, death, and kidnapping."
 
 
 14
 In reviewing a district court's departure from the Guidelines, this court employs a three-prong test. First, we consider whether the circumstances of this case are sufficiently unusual to warrant departure. As this is a question of law, review is de novo. Second, we determine whether the circumstances that allegedly justify departure actually exist. Review is for clear error. Third, this court determines whether the degree or range of departure was reasonable. United States v. Thomas, 24 F.3d 829, 832 (6th Cir.), cert. denied, 115 S.Ct. 453 (1994); United States v. Joan, 883 F.2d 491, 494 (6th Cir.1989). In regard to the third prong, "reasonableness is a flexible standard which 'involves what is quintessentially a judgment call' " and a reviewing court must, therefore, give deference to the trier of fact's "superior 'feel' for the case." Thomas, 24 F.3d at 833 (citations omitted). For this reason, we determine reasonableness based, in part, on " 'the reasons for the imposition of the particular sentence as stated by the district court." Id.
 
 
 15
 Here the departure passes muster. First, contrary to Henderson's position, the four circumstances relied upon by the district court are sufficiently unusual to warrant departure. In regard to the use of an accomplice, Sec. 2B3.3 does not directly account for situations involving a threat of an accomplice. As the district court correctly pointed out, an accomplice is akin to a dangerous weapon, which Sec. 2B3.3 classifies as a type of aggravating circumstance warranting an increase in sentence. Next, the fact that this case involves more than one victim is sufficiently unusual to warrant a departure. Indeed, both notes seven and eight of the Sec. 2B3.3 commentary indicate by implication that an upward departure may be justified when there are a number of victims. Next, the age of one of the victims (18 months) is not accounted for in Sec. 2B3.3 and sufficiently unusual to justify departure. Finally, Sec. 2B3.3 is silent as to extreme psychological injury, so, assuming facts permit, the existence of extreme psychological injury provides a basis for departure.
 
 
 16
 Second, the existence of multiple victims, a very young victim and the threat of an accomplice are undisputed. Hence, the aggravating circumstances cited by the district court for the first three bases are actually present in this case. An issue exists, however, whether the district court found sufficient facts to support a finding of extreme "psychological injury much more serious than that normally resulting from [extortion]...." as required by Sec. 5K2.3. Section 5K2.3 provides:
 
 
 17
 Normally, psychological injury would be sufficiently severe to warrant application of this adjustment only when there is a substantial impairment of the intellectual psychological, emotional, or behavior functioning of a victim, when the impairment is likely to be an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns.
 
 
 18
 The district court believed that as the offenses at issue extended over a two-month period and involved a threat to kidnap and sell the Meadowses' child, it can be "reasonably expected" that the victims will suffer extended psychological harm. Conclusory statements and hypotheses are insufficient for purposes of Sec. 5K2.3, however. Rather, there must be some evidence of substantial impairment or duration. United States v. Lara, 975 F.2d 1120, 1128 (5th Cir.1992); see also United States v. Bond, 22 F.3d 662, 672 (6th Cir.1994). As neither exists in the present case, we cannot conclude that the one-point enhancement for extreme psychological injury has support in the record.
 
 
 19
 Reversal is not necessary, however, if this court finds that at least one of the stated grounds for departure is valid and that the district court would have imposed the same sentence without the invalid ground. Williams v. United States, 503 U.S. 193 (1992). Both are present here. First, as indicated above, we hold that three of the four stated grounds for departure are valid. Second, the record indicates that the district court could and would have imposed the same sentence even without the one point for psychological injury. The court stated that, in its opinion, the four factors "taken individually might easily justify, as I said, 3, 3, 2, and 2 point increases ... the Court believes that the increases should be two [each].... And actually, that's a whole lot less than I could otherwise justify going." This is sufficient.
 
 
 20
 Finally, given the nature of this case and the fact that this court must substantially defer to the district court's sentencing decision, United States v. Lucas, 889 F.2d 697, 701 (6th Cir.1989), we deem the six-level increase to be reasonable.
 
 
 21
 C) Testimony by Mrs. Meadows.
 
 
 22
 Henderson contends that his rights were "unfairly prejudiced" when Mrs. Meadows stated on cross-examination at the sentencing hearing that she thought that Henderson should receive a sentence of ten years. Defendant's claim of error is baseless, however. Mrs. Meadows offered the testimony in question only in response to defense counsel's question on cross-examination. Hence, defendant elicited the very information that he now challenges as prejudicial. Further, there is no evidence in the record that the district court based the 110 month sentence on Mrs. Meadows's wishes. In fact, Henderson received a sentence of less than ten years. Therefore, any error committed was harmless.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 The note read (with misspelling included):
 MRS. MEADOWS,
 YOU NEED TO GET $250,000 IN CASH IF YOU CALL THE POLICE OR FBI OR ANY LAW I OR MY BUDDY WILL KILL YOU AND YOU DAUGHTER SHE TO YOUGTH TO DIE IF YOU SHOW GREG THATS ALL IF YA DO YOU AND YOU LITTLE GIRL WILL DIE. SO DO AS WE ASK AND NO ONE WILL GET HURT AND YOU TAKE THE MONEY MRS. MEADOWS TO THE PLACE WE TELL YOU TO GO YOU BY YOURSELF IF YA DONT BRING THE MONEY YA WILL DIE BRING THE MONEY MARCH 2 AND 4:00 PM. PUT IT IN A BLACK GARAGE BAG OVER THE GATE AND LEAVE
 
 
 [2]
 The second note read:
 MRS. MEADOWS
 THIS IS THE LAST TIME YOUR WELL GIT LETTER FROM ME ASKING YOU FOR SOME MONEY THE ONLY THINK THAT WILL KEEP YOU AND YOUR LITTLE GIRL TOGETHER IS TO PAY US $250,000,00 WE HAVE GOT YOUR LITTLE GIRL SOLD BUT WE WILL GET MORE MONEY THIS WAY IF YOUR WONT TO KEEP HER. WE WERE GOING TO KILL YA BUT MY BUDDY GOT HER SOLD SO THAT I DONT'T THINK YA BELIVE US BUT WE WILL GET THE MONEY ONE WAY OR OTHER. I HOPE YOU DONT PAY SO I CAN'T FUCK YOU IN THE ASS. I GET HARD ON WENT I JUST SEE YOU. SO DON'T BELIVE US I GET TO FUCK YOU AND HE WILL SELL YOUR GIRL. AS YOU KNOW THIS IS THE SECOND LETTER WE HAVE WROTE I HAVE TIME ON MY SIDE. TAKE THE MONEY TO THE X ON THE MAP WENT AND WHAT TIME IF THE COPS OR ANY ONE LIKE THAT ARE CALL YOU MITE GET ONE BUT NOT BOTH OF US. TAKE THE MONEY MAY 3, 1994 AT 4:00 P.M. IF YOU DON'T YOU WILL FEEL ME IN SIDE YOU AND YOU LITTLE GIRL SOLD ITS UP TO YA.