**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Timothy L. LITTLE, Defendant–**
**Appellant.**

No. 94–6051.

United States Court of Appeals,
Sixth Circuit.

Argued May 16, 1995.

Decided July 27, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 5, 1995.*

* Contie, Circuit Judge, would grant rehearing for the reasons stated in his dissent.

Lawrence J. Laurenzi, Asst. U.S. Atty. (argued and briefed), Memphis, TN, for plaintiff-appellee.

Charles P. Roney (argued and briefed), Memphis, TN, for defendant-appellant.

Before: CONTIE, MILBURN, and SILER, Circuit Judges.

SILER, J., delivered the opinion of the court, in which MILBURN, J., joined. CONTIE, J. (pp. 454–57), delivered a separate dissenting opinion.

SILER, Circuit Judge.

Defendant Timothy Little challenges his sentence of life imprisonment on his conviction for being a felon in possession of a firearm, 18 U.S.C. § 922(g), and qualifying as an armed career criminal, 18 U.S.C. § 924(e). Little argues that the district court had no basis for departing upward by six levels and contends that the length of the sentence imposed is unreasonable. For the reasons stated herein, we affirm the decision of the district court.

## I.

On December 29, 1993, Little, an employee of a lawn service, was raking leaves at a home in Memphis, Tennessee. He knocked on the door of the house and asked the resident, a woman, if he could use the telephone. The woman allowed Little into her home. Once inside, Little pulled out a gun and ordered the victim to disrobe, pushed her to a bedroom, and forced her to perform oral sex. Little also attempted to have vaginal and anal intercourse with the victim, but he was unable to do so. He then penetrated the victim digitally both anally and vaginally. Once he was finished, he told the victim to get dressed and showed her that his gun contained no bullets. He instructed the victim not to call the police and left the house, returning to his yard duties. The victim immediately called the police. When the police arrived, Little was still on the property raking leaves. While he did not have the firearm in his possession, he willingly told the police of its location.

Little pleaded guilty to possession of a firearm by a felon, 18 U.S.C. § 922(g). The government sought a sentence enhancement pursuant to 18 U.S.C. § 924(e), the armed career criminal statute. The presentence investigation report indicated a criminal history score of 15 points based, in part, on the following: (1) a state conviction for criminal sexual conduct, robbery with a deadly weapon, and kidnapping a store clerk; (2) two burglary convictions; and (3) a burglary charge. Little also had a juvenile record, including assault and battery of a female and prowling (peeping into a woman's bedroom window). Little's offense level was 31, with a criminal history category (CHC) of VI, and a guideline imprisonment range of 188 to 235 months.

A week before sentencing, Judge Gibbons informed Little that she was considering making an upward departure. After defendant submitted his objections to such a departure, the district court sentenced Little to life imprisonment, stating as its basis, the seriousness of Little's criminal behavior and, given Little's severe sexual dysfunction, the high probability of recidivism. Little now challenges the length of the sentence imposed.

## II.

Little contends that as CHC VI adequately reflected the seriousness of his criminal conduct and the likelihood that he would commit more crimes, the district court erred in making an upward departure pursuant to USSG § 4A1.3, which provides:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.

In reviewing a district court's departure from the Guidelines, this court employs a three-prong test. First, we consider

whether the circumstances of the case are sufficiently unusual to warrant departure. As this is a question of law, review is de novo. Second, we determine whether the circumstances that justify departure actually exist. Review is for clear error. Finally, we determine whether the degree or range of departure was reasonable. *United States v. Thomas*, 24 F.3d 829, 832 (6th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 453, 130 L.Ed.2d 362 (1994); *United States v. Joan*, 883 F.2d 491, 494 (6th Cir.1989). In regard to the third prong, "reasonableness is a flexible standard which 'involves what is quintessentially a judgment call' " and a reviewing court must, therefore, give deference to the trier of fact's "superior 'feel' for the case." *Thomas*, 24 F.3d at 833 (citing *Joan*, 883 F.2d at 494 (citations omitted)). For this reason, we determine reasonableness based, in part, on " 'the reasons for the imposition of the particular sentence as stated by the district court.' " *Id.*

■ Review of the record reveals circumstances sufficiently unusual to warrant departure. "In determining whether an upward departure from Criminal History Category VI may be warranted, the court should consider that the *nature* of the prior offenses rather than simply their number is often more indicative of the seriousness of the defendant's criminal record." USSG § 4A1.3 (emphasis added). Little has twice committed rapes at gunpoint. His criminal background is peppered with instances of sexual misconduct. He has undergone numerous unsuccessful hospitalizations in order to treat his sexual dysfunction. In fact, Little was under the care of a psychiatrist for his sexual dysfunction when he committed the present rape. As stated in the presentence report, Tim Gesky, a prior counselor of Little, indicated that:

[Little] is most comfortable in prison where his sexual needs are met.... [He] has no tools with which to live on the outside. It is part of the culture of violence in prison wherein the defendant learned his sexual responses. It is thought that the fear he instills in his victims acts as a primary factor for his sexual arousal. Sex to Mr. Little is equivalent to violence or against a person's will.

Moreover, Little presents a very high risk of recidivism. As the presentence report correctly noted, "defendant's first adult conviction was at the age of 18. He is now 33. Of the 15 intervening years, 12 ... have been spent in custody." Indeed, Little was free from prison only six months before he committed the present offense. While it is true that the Guidelines generally take recidivism into account, they do not sufficiently account for psychological problems such as the one at hand.[1] The circumstances of this case are, therefore, sufficiently unusual to warrant an upward departure.

■ Next, the sentencing court's findings justifying the departure are not clearly erroneous. As an initial matter, enhancement factors need only be supported by a preponderance of the evidence. Hence, Little faces a tough burden in attempting to prove that the district court clearly erred in its findings. He primarily contends that the district court erred in relying on the opinions of certain professionals as contained within the presentence report.[2] As this circuit stated in *United States v. Silverman*, 976 F.2d 1502 (6th Cir.1992)(en banc), *cert. denied*, —— U.S. ——, 113 S.Ct. 1595, 123 L.Ed.2d 159 (1993), however, a sentencing court may consider any information as long as there exist " 'sufficient indicia of reliability to support its probable accuracy.' " *Id.* at 1513 (citations omitted). The professionals' statements meet this test. Both Little's mother and

---

1. For the same reason, the cases of *United States v. Wolak*, 923 F.2d 1193 (6th Cir), *cert. denied*, 501 U.S. 1217, 111 S.Ct. 2824, 115 L.Ed.2d 995 (1991), and *United States v. Kennedy*, 893 F.2d 825 (6th Cir.1990), upon which Little relies, are distinguishable. The present case, unlike *Wolak* or *Kennedy*, involves circumstances much more egregious than an extensive criminal history. *See Wolak*, 923 F.2d at 1200.

2. Little argued to the district court that, as he did not have an opportunity to cross-examine the professionals, their opinions are inherently unreliable. However, no right to confrontation attaches at sentencing. *United States v. Silverman*, 976 F.2d 1502, 1514 (6th Cir.1992)(en banc), *cert. denied*, —— U.S. ——, 113 S.Ct. 1595, 123 L.Ed.2d 159 (1993).

Little himself admitted that he had a major sexual dysfunction. The professionals' opinions thus simply confirm many of Little's own admissions.

 Finally, a life sentence, while severe, is reasonable given the circumstances of this case. The district court stated, in part, the following as its reasons for imposing the sentence:

> [T]he Court has considered certainly the very serious nature of Mr. Little's past offenses, which include two rapes at gunpoint, . . . but the Court also considers the number of offenses that triggered the armed career criminal status, [that] went beyond what would be required . . . to begin with.
>
> * * *
>
> But even really more important in this particular case . . . is the likelihood that Mr. Little will commit other crimes. The Court is motivated by a sense of responsibility to do what the Court can in this situation to protect society from future crimes by Mr. Little.

 Given that, as a rule, "unless there is little or no basis for the court's actions [in making an upward departure], the sentence should be upheld," *Thomas*, 24 F.3d at 833 (citing *United States v. Joan*, 883 F.2d 491, 494 (6th Cir.1989)), we conclude that the length of the sentence imposed was reasonable. While a life sentence is extreme, it is significant that 18 U.S.C. § 924(e) authorizes a sentence of life imprisonment as a maximum punishment. *See, e.g., Wolak*, 923 F.2d at 1199; *United States v. Carey*, 898 F.2d 642, 646 (8th Cir.1990). Congress thus expected that life imprisonment would be appropriate in some cases. Furthermore, Little's extensive criminal background and the failure of prior incarcerations to deter him from criminal activity support the imposition of a lengthy sentence. Finally, his apparent uncontrollable and irreparable sexual dysfunction requires at least an extended period of incarceration for, if nothing else, society's protection.

 As an alternative argument, Little contends that "the District Court Judge erred in failing to consider intermediate lev-

els of departure as required by *United States v. Kennedy*, 893 F.2d 825 (6th Cir.1990)." However, "[n]either the Guidelines nor the law of this circuit require the district court to provide a mechanistic recitation of its rejection of the intervening, lower guideline ranges." *Thomas*, 24 F.3d at 834. Rather, as § 4A1.3 explicitly directs, when a defendant is already at CHC VI, the district court need only move incrementally down the sentencing table until it finds an offense level that is appropriate to the case. A court is not required to "move only one level, or to explain its rejection of each and every intervening level." *Id.* Rather, "[s]ection 4A1.3 and [circuit case law] constrain the court only to the extent that it must use the offense level ranges as a reference, and depart from them no further than is required to reach a gridlock that contains a reasonable sentence for the defendant. . . ." *Id.* at 835–36.

The district court satisfied the *Thomas* test. It rejected the intermediate levels as too lenient under the particular circumstances. It was concerned "that there would be no lesser punishment that would fully protect society as the great likelihood that Mr. Little, if released from prison, would commit further crimes." We find this to be sufficient.

**AFFIRMED.**

CONTIE, Circuit Judge, dissenting. I respectfully dissent. I do not believe the upward departure from a maximum sentence of 235 months (19 years, 7 months) under the applicable guideline range for being a former felon in possession of a firearm to a sentence of life imprisonment is reasonable. It is clear from the record that the district court sentenced defendant on the basis of the state offense he committed while unlawfully possessing the firearm—the sexual assault that occurred in conjunction with defendant's possession of the gun. The district court's responsibility in this case was to sentence defendant Little for a federal weapons possession violation. The state court had responsibility for dealing with the sexual offense. The district court was aware that defendant Little would be sentenced for the sexual offense in state court after the district court

imposed a sentence for the federal weapons possession charge. I believe the substance of the following exchanges is inconsistent with the demarcation of responsibility between the state court and the district court.

> THE COURT: He is in state custody for—How did he end up in state custody?
>
> MR. RONEY: The underlying charge [the criminal sexual conduct].
>
> THE COURT: He was taken into state custody?
>
> MR. RONEY: Correct.
>
> THE COURT: Initially?
>
> MR. RONEY: That's correct.
>
> THE COURT: And indicted over there?
>
> MR. RONEY: That's my understanding.
>
> THE COURT: What's going to happen to the—
>
> MR. RONEY: There will be a guilty plea in that case, Your Honor, after this case is disposed of.
>
> . . . .
>
> THE COURT: Is he going to receive a state sentence that is concurrent with the federal sentence? Is that what is being contemplated?
>
> MR. RONEY: Of course, Your Honor, I'm not representing him there, but that's my understanding.

Joint Appendix at 49–51. The following exchange indicates that at the root of the district court's rationale for upwardly departing from a maximum guideline sentence of 235 months to life imprisonment for a federal weapons possession offense was the district court's belief that the state court would not impose an adequate sentence for the related conduct—the sexual offense. Defendant Little's counsel informed the court that:

> He [Little] is pending charges for the aggravated rape in state court, if Your Honor please. It's my understanding—For the record, I'm not representing him ... there, but it's my understanding that that will result in a guilty plea, and I can tell the Court that any kind of rape charge prior to a defendant being released under Tennessee state parole provisions would require that a competent psychologist or psychiatrist enter a finding that he is no

longer a threat to society, so he would not receive parole under the state system until there was such a finding.

Joint Appendix at 60.

The district court responded:

> I wish that I could have the faith that Mr. Roney suggests I should have in the state system's ability to evaluate whether Mr. Little will commit future crimes, but I simply don't think that I can abdicate the responsibility that I feel in this situation based on a hope that the state system will be infallible in its determination as to when it might be appropriate to release Mr. Little. It is with that realization and consideration that I feel that this sentence [life imprisonment] is the one that I must impose.

Joint Appendix at 72.

I believe this is an impermissible reason for an upward departure from the applicable sentencing guideline range and the imposition of the draconian sentence of life imprisonment. I am of the opinion that the district court abused its discretion by preempting the state court's authority to sentence Little for the underlying sexual offense. Although the district court did not explicitly state that it was basing the sentence of life imprisonment on relevant conduct (the sexual assault that occurred in conjunction with defendant's possession of the gun), the court's statements in this regard make it clear that, in essence, this is what the district court was doing. In imposing such a draconian sentence for weapons possession (a six-level departure from the applicable guideline range), the district court determined that defendant posed a permanent threat to society, relying primarily on the assessment contained in the presentence report of Tom Gesky, who, contrary to the majority's assertion, has no stated qualifications as a professional psychologist or psychiatrist. The record indicates that Gesky worked with defendant through a twelve-step Alcoholics Anonymous program and that he works at Synergy, a halfway house. There is nothing to indicate that Gesky has any professional credentials. Contrary to the majority, I find no professional opinion in the record with sufficient indicia of reliability to support the district

court's conclusion. Therefore, although I believe the circumstances of this case are sufficiently unusual to warrant an upward departure, I do not find that the evidence supports the justifications that were provided for a departure to life imprisonment. There is not one statement in the presentence report by a professional qualified to discuss Little's psychological status that supports the district court's conclusion that he poses a permanent threat to society.[1]

Furthermore, the district court's six-level increase to a sentence of life imprisonment on the basis of relevant conduct undermines the purpose of the Federal Sentencing Guidelines. As this court stated in *United States v. Robison*, 904 F.2d 365, 373 (6th Cir.), *cert. denied*, 498 U.S. 946, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990):

> [T]he Sentencing Guidelines were designed to provide more uniformity in sentencing by proscribing ranges appropriate to similar defendants. Whether a judge agrees or disagrees with the Guidelines, it is his duty to abide by those ranges and depart only in the "unusual" cases where the Guidelines do not adequately take into account the nature of the crime. In short, it is the *United States Sentencing Commission Guidelines*, not individual judges, that now dictate the appropriate range of sentences in a case.

I believe the district court violated this criterion for federal sentencing in the present case. Although the court stated that pursuant to U.S.S.G. § 4A1.3, the court was departing upward because defendant's criminal history category did not adequately reflect the seriousness of defendant's past criminal conduct, the district court did not base its assessment of the seriousness of defendant's past criminal history on an objective standard, such as the number of defendant's criminal history points, but was swayed by the nature of the related conduct. In *United States v. Doucette*, 979 F.2d 1042, 1048 (5th Cir.1992), the court comprehensively reviewed the occasions for upward departure because of an egregious, serious criminal record. Although in *Doucette* sentences more than four times greater than the guide-

line maximum were found to have been approved, there was no case in which there was an upward departure to life imprisonment, and I can find no published opinion upholding such a departure. In cases in which the defendant's criminal history category is VI (the highest criminal history category under the Sentencing Guidelines), upward departures pursuant to U.S.S.G. § 4A1.3 are primarily made on the basis of a high criminal history score greatly exceeding the 13 points needed to be placed in Category VI. *United States v. Thomas*, 24 F.3d 829 (6th Cir.) (criminal history score of 43, triple the 13–point threshold for Category VI, warrants upward departure of 30 months), *cert. denied*, —— U.S. ——, 115 S.Ct. 453, 130 L.Ed.2d 362 (1994); *United States v. Eve*, 984 F.2d 701 (6th Cir.1993) (because defendant scored only 13 points in criminal history category, upward departure based on district court's concern with past criminal conduct not warranted); *United States v. Osborne*, 948 F.2d 210 (6th Cir.1991) (criminal history score of 24 was so high, Category VI did not reflect seriousness of past criminal conduct); *United States v. Belanger*, 892 F.2d 473 (6th Cir.1989) (29 point criminal history computation, more than double the number of points required to place a defendant in Category VI, warrants upward departure). In contrast, in the present case, defendant's criminal history score is 15, only two points above the required 13 points needed to be placed in Criminal History Category VI. Therefore, this is not a case in which a high criminal history score, which is an objective criterion of the seriousness of a defendant's past criminal conduct, warrants departure. The district court departed six-levels from a guideline maximum sentence of 235 months and imposed a life sentence because the court did not trust the state system to adequately protect society from defendant. There is no precedent for such a dramatic six-level departure from the U.S.S.G. guideline range based on relevant conduct. Moreover, I believe the majority opinion sets a dangerous precedent, opening the floodgates to the imposition of unlimited penalties based on relevant conduct, rather than on the federal of-

---

1. Based on the district court's sentence, if defendant lives to be 80 or 90, he will still be in prison. I believe that if defendant reaches this

age, it is hard to argue that recidivism will be a concern.

fense for which the defendant has been convicted.

Horrific as defendant's conduct may be, the criminal sexual conduct is not the offense the federal court should have focused on, particularly given the fact that defendant was awaiting sentence in state court for the related sexual offense. I object that a federal district court, in effect, has taken on the role of supervisor of the state system through the surreptitious route of imposing a life sentence based on relevant conduct. The district court indicated that it did not trust the state court to adequately sentence defendant for the criminal sexual conduct and, therefore, the court decided to circumvent the impact of any possible state sentence by imposing a sentence of life imprisonment in federal court for weapons possession. I believe this offends principles of comity, and the district court has usurped the state of Tennessee's authority to sentence defendant to forty years imprisonment for the criminal sexual conduct.[2] Because I find that the record does not support the conclusion that defendant poses a life-long threat to society, I do not believe a sentence of life imprisonment is reasonable. For these reasons, I dissent and recommend that this case be remanded to the district court for resentencing.

2. On August 26, 1994, defendant pled guilty to the criminal sexual conduct in state court and was sentenced to 40 years imprisonment.