36 F.3d 1098
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Allen Dwayne MOORE, Defendant-Appellant.
 No. 93-4160.
 United States Court of Appeals, Sixth Circuit.
 Sept. 15, 1994.
 
 Before: GUY* and BOGGS, Circuit Judges; and CLELAND, District Judge.**
 PER CURIAM.
 
 
 1
 Defendant, Allen Moore, was convicted by a jury of making false statements in connection with the acquisition of a firearm. 18 U.S.C. Secs. 922(a)(6) and 924(a)(1)(B).
 
 
 2
 On appeal, defendant raises three claims: (1) the district court erred in admitting into evidence certain items seized during the execution of a search warrant; (2) the evidence was insufficient to support the conviction; and (3) the court erred at sentencing by not giving defendant a two-point reduction for acceptance of responsibility.
 
 
 3
 Our review of the record convinces us that no error occurred requiring reversal, and we affirm the conviction and sentence.
 
 I.
 
 4
 The facts are relatively straightforward. On November 16, 1992, Moore purchased a .38 caliber revolver. Moore had a prior felony record and thus was disqualified from firearm ownership or possession. The circumstances surrounding this purchase, which we must view in the light most favorable to the government, are as follows.
 
 
 5
 The revolver was purchased from Hamilton's Gun Shop in Obetz, Ohio. Moore was with his wife and an unidentified young man at the time of the purchase. Moore and his wife had been in the store before, and both were recognized by the store clerk. Mrs. Moore on prior occasions had purchased firearms at this store.
 
 
 6
 Before the purchase was completed, the clerk, Fred Webb, produced a Bureau of Alcohol, Tobacco and Firearms (ATF) Form 4473. Federal law requires that this form be filled out and signed by a purchaser of a firearm. Webb read the form aloud to Moore. Included in the form was Question 8b, which asks if the purchaser has ever "been convicted in any court of a crime punishable by imprisonment for a term exceeding one year."
 
 
 7
 After reading the form aloud, Webb noticed that Moore appeared confused, and so he re-read the form to Moore. Moore then stated that he could neither read nor write and asked if his wife could fill out the form. Webb told Moore that was permissible, so long as Moore signed the form if the firearm was to be registered to him.
 
 
 8
 In connection with a firearm purchase, a prospective purchaser also must produce proper identification. When Webb asked Moore for identification, all Moore was able to produce was a private security guard card. Webb was uncertain as to whether this type of ID was adequate, so he consulted with the store owner, Carol Hamilton.
 
 
 9
 Hamilton also recognized Moore and his wife as former customers. She told Webb the proffered ID would suffice, but also read aloud to Moore Form 4473 for a third time. At this point in time, Moore responded, "I don't have nothing on me." Mrs. Moore then proceeded to fill out the form with answers provided by defendant.[1] Moore then signed the form. Directly above the signature line, printed language appears as follows:
 
 
 10
 I hereby certify that the answers to the above are true and correct. I understand that a person who answers "Yes" to any of the above questions is prohibited from purchasing and/or possessing a firearm, except as otherwise provided by Federal law. I also understand that the making of any false oral or written statement or the exhibiting of any false or misrepresented identification with respect to this transaction is a crime punishable as a felony.
 
 
 11
 Following the signing of the form, defendant left with the firearm.
 
 
 12
 Some months later, in February 1993, Virginia Moore was being attended to by a private nurse, Christine O'Brien. The nurse knew that Allen Moore had a felony record. After O'Brien saw Moore wearing a holster and firearm around the house as well as a shotgun on the premises, she notified the ATF.
 
 
 13
 ATF agents secured a search warrant and proceeded to execute it at Moore's residence. When the agents knocked on the door, it was answered by a tenant living with the Moores. The tenant called Moore, and when Moore came to the door he was holding a firearm, which the agents seized. The firearm turned out to be the one purchased on November 16, 1992. The agents also seized a gun belt with an empty holster and a "speed loader" pouch, a 16-gauge shotgun, a knife, and a second gun belt with two speed loader pouches. Each of the three speed loader pouches contained a five-round speed loader fully loaded with .38 caliber ammunition.
 
 
 14
 After being read his Miranda rights, Moore was questioned. He first denied, but later admitted, his prior felony record. He also admitted he had purchased the revolver at Hamilton's Gun Shop and that he had lied to the employee who read him the questions from Form 4473.
 
 
 15
 At trial, the government also called a handwriting expert, who testified that Moore had signed the Form 4473.
 
 
 16
 The ATF agents testified, without objections, as to the execution of the search warrant and the items seized. However, when the government sought to introduce the items seized or photographs thereof, defense counsel objected, relying on Fed.R.Evid. 403. The trial judge nonetheless admitted these exhibits into evidence, finding them to be relevant to the issue of ownership of the firearm.
 
 II.
 
 17
 We first address defendant's contention that it was error requiring reversal for the trial judge to have admitted into evidence the items seized during the execution of the search warrant. We are inclined to agree that the admission of such evidence was error. There was no relevance to these items except for the firearm purchased by Moore.
 
 
 18
 Although Moore did not testify at trial, it is clear that he did not dispute ownership of the handgun. Since he had the firearm in his hand when the agents arrived to search his house, no one can seriously suggest this was a trial about ownership.
 
 
 19
 However, we find that the error was harmless beyond any doubt. First of all, the agents had already testified, without objection, as to the items they seized.[2] Perhaps even more important is the fact that, since defendant was charged with a crime that only could be committed by a felon, the jury already knew he had a felony record.[3] Finally, this case was about the acquisition of a firearm, so the fact that the jury learned, albeit unnecessarily, that defendant also possessed a holster, some speed loaders, and a shotgun is hardly prejudicial. In this regard, the defense itself introduced evidence relative to Moore's employment as a security guard. Whatever error may have been involved here certainly is not grounds for reversal.
 
 III.
 
 20
 Defendant next challenges the sufficiency of the evidence. Defendant made a motion for judgment of acquittal at the close of the government's case, but did not renew this motion at the close of all the evidence. As we stated in United States v. Rigsby, 943 F.2d 631, 644 (6th Cir.1991), cert. denied, 112 S.Ct. 1269 (1992): "Failure to renew a motion for judgment of acquittal at the close of all the evidence limits the reviewing court to examine for plain error or to determine whether a manifest miscarriage of justice has occurred." After carefully reviewing the evidence introduced against Moore at trial, we find neither plain error nor a manifest miscarriage of justice.
 
 
 21
 On the elements of the offense with which defendant was charged, the jury was correctly instructed as follows:
 
 
 22
 In order to establish this offense, the government must prove beyond a reasonable doubt each of four essential elements. The government must prove beyond a reasonable doubt first that the defendant acquired a firearm from a federally licensed firearms dealer.
 
 
 23
 Second, that in so doing, the defendant knowingly made a false or fictitious statement, orally or in writing, likely to deceive.
 
 
 24
 Third, that the subject matter of the false statement was material to the lawfulness of the sale.
 
 
 25
 And fourth, that the offense charged occurred within the Southern District of Ohio, on or about the date alleged in the indictment.
 
 
 26
 (Trial Tr. of 6/8 and 6/9/93, p. 50.)
 
 
 27
 Defendant admits that he acquired a firearm from a federally licensed firearms dealer. The court found, as a matter of law, that the alleged false statement was material, and the court also instructed the jury that the alleged offense occurred within the Southern District of Ohio. In short, the only issue left for the jury to resolve was whether defendant "knowingly made a false or fictitious statement, orally or in writing, likely to deceive." Since the alleged false statement concerned the applicant's disqualification from firearms ownership, it is clear that if such a false statement were made it would be likely to deceive. A federally licensed firearms dealer is prohibited from selling a firearm to a convicted felon. This would have been apparent to the jury, but it also was supported by testimony from the firearms dealer. Thus, our only inquiry is whether the evidence was sufficient to allow a reasonable juror to conclude that defendant knowingly made a false statement. We believe that the record amply provides the support for the conclusion reached by the jury.
 
 
 28
 We start with what occurred at the gun shop at the time of the purchase. Carol Hamilton, the gun shop owner, testified that the woman who accompanied defendant--a woman Hamilton identified as defendant's wife--filled out Form 4473. Hamilton further testified that she specifically read the question to defendant relative to his past felony record, and he responded, "I haven't had anything on me," or words to that effect. After defendant made this response, the woman who was with him wrote "No" in the box following the question inquiring about prior felony convictions. At the conclusion of her direct examination, Hamilton testified as follows:
 
 
 29
 Q With regard to this question on the 4473, where it says "Have you ever been convicted of a crime for a term of imprisonment exceeding one year," did Mr. Moore make any other verbal response with regard to restoring rights or being pardoned or any of these other exceptions under that particular box? Did he say anything else?
 
 
 30
 A No, sir.
 
 
 31
 Q All right. So there were no excuses at the time the gun was purchased? He said, "No, I am not a convicted felon"?
 
 
 32
 A Right, yes, sir.
 
 
 33
 (Trial Tr. Vol. II, p. 26.) On cross-examination, Hamilton stated that Webb also read the questions to defendant, and she indicated that, when Webb read the question relative to prior felony convictions, Moore answered, "No."
 
 
 34
 As part of his testimony relative to his participation in the sale, Webb testified on redirect examination as follows:
 
 
 35
 Q Mr. Webb, briefly, would you ever sell a gun to someone who refused to answer the question "have you ever been convicted of a felony"?
 
 
 36
 A No, I would not.
 
 
 37
 Q Did you sell the defendant a gun on November 16th, 1992?
 
 
 38
 A Yes, I did.
 
 
 39
 Q So you must have gotten the response to 8b that he had not been convicted of a felony?
 
 
 40
 A Yes, ma'am.
 
 
 41
 (Trial Tr. Vol. II, p. 67.)
 
 
 42
 Although admittedly there are some discrepancies in the record of the witnesses' versions of what occurred, nonetheless, the picture that emerges is that Moore was asked on at least three occasions whether he had a prior felony record, and he indicated that he did not. Furthermore, after being arrested, he admitted to the agent that he had lied in connection with the purchase of the firearm.
 
 
 43
 Q Did you ask him about this particular gun, Exhibit 1?
 
 
 44
 A Yes, I did.
 
 
 45
 Q And what did he say at the time you talked to him at his arrest?
 
 
 46
 A He mentioned that he had purchased that gun down at Hamilton's Gun Shop, in Obetz. He also said that he couldn't read or write, so the lady at the store read the questions to him.
 
 
 47
 Q Did he admit that he lied to the lady at the store?
 
 
 48
 A Yes.
 
 
 49
 (Trial Tr. Vol. II, p. 81.)
 
 
 50
 Defendant now argues that this inquiry was too general to be meaningful in that he could have lied about something other than his status as a convicted felon. Although this is theoretically true, the jury was never presented with any evidence as to any other false statements made by defendant, except the one concerning his past felony record.
 
 
 51
 Defendant's wife testified on his behalf; however, it is questionable how much help she provided with her testimony. For example, the following exchange occurred during her testimony:
 
 
 52
 Q Now, since you have been married to Mr. Moore, do you know whether or not he has ever performed security work for anyone?
 
 
 53
 A Yes, Carey McClanahan.
 
 
 54
 Q Carey McClanahan?
 
 
 55
 A Yes.
 
 
 56
 Q And what type of security work did he do for Mr. McClanahan?
 
 
 57
 A Well, he didn't get paid for it, so evidently it was volunteer. He asked him to go to work, he bought his uniforms, and he said, "If you don't carry guns, you don't work for me."
 
 
 58
 And so he went to Hamilton Gun Shop, bought all the guns, and when I filled the things out before I went into the hospital, I asked him, I said, what shall I put on here if you're a convicted felon, and Mr. McClanahan said don't say that, I can get in trouble, because I know he was on parole, or a convicted felon.
 
 
 59
 (Trial Tr. Vol. II, p. 157.)
 
 
 60
 Although this testimony does not relate specifically to defendant's making a false statement, it does indicate that his wife was familiar with Form 4473 and she knew that a convicted felon would have to lie in order to purchase a firearm. If the jury believed Virginia Moore was the person with defendant at the time the gun was purchased, this testimony would be extremely relevant to the manner in which Mrs. Moore would have filled out the form for her husband. In this regard, we also note that the jury was charged on the offense of aiding and abetting, so that defendant could have been found guilty as a principal even if he only had aided his wife in providing false answers on the form.
 
 
 61
 Although the government cites a number of cases in which circumstantial evidence was deemed sufficient to convict a defendant of making a false statement in connection with the purchase of a firearm, we find it unnecessary to review these cases here. Under the facts here, it is clear beyond question that the jury reasonably could have concluded that defendant falsified his status as a convicted felon in order to facilitate or accomplish the purchase of a firearm.
 
 IV.
 
 62
 Moore's final claim of error is that at sentencing he should have been awarded a two-point reduction for acceptance of responsibility. We review a denial of a downward adjustment for acceptance of responsibility under a clearly erroneous standard. United States v. Osborne, 948 F.2d 210, 211 (6th Cir.1991). However, even if we were to review this de novo, we would agree with the conclusion reached by the trial judge.
 
 
 63
 Moore pleaded not guilty and elected to go to trial. For this he may not be penalized. At trial, however, although he did not personally testify, defendant built his defense around the contention that he made no false statements intentionally. Post-trial and up to and including sentencing, defendant continued to insist that he could not recall being asked any questions about his past felony record. There is a Catch-22 of sorts in the sentencing guidelines relative to acceptance of responsibility. If a defendant steadfastly maintains his innocence, goes to trial, is convicted, and still adamantly proclaims his innocence, he will not qualify for the acceptance of responsibility reduction. Thus, if a defendant truly believes he is innocent, he would have to go through the charade of appearing to cast aside this belief in order to have any realistic chance of qualifying for a reduction for acceptance of responsibility. However, since this reduction is bottomed on conserving time and resources as much as it is on any theoretical benefit flowing from a defendant's contriteness, not all defendants will qualify. This is no different from the situation where a reduction is based on cooperation with the government. Some defendants will be in a position to be helpful and some will not.
 
 
 64
 Here, although he admitted to the purchase of the firearm, defendant continued to deny any responsibility for providing a false answer. Under such circumstances, a trial judge properly withholds the reduction. United States v. Herrera, 928 F.2d 769, 774-75 (6th Cir.1991) (affirming denial where the defendant accepted responsibility for some, but not all, of the drugs).
 
 
 65
 AFFIRMED.
 
 
 
 *
 Honorable Ralph B. Guy, Jr. assumed senior status on September 1, 1994
 
 
 **
 Honorable Robert H. Cleland, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Defendant's wife, Virginia Moore, testified at trial. She denied filling out the form and further denied she was even at the store on November 16, 1992, claiming to have been hospitalized on that date. No medical records were produced to support this claim. Although Webb and Hamilton only made a "looks like" identification, Virginia Moore had been in the store on other occasions
 Since Virginia Moore denied being present, she related nothing at trial either inculpatory or exculpatory as to the events that took place on November 16, 1992. She did admit, however, that she knew that her husband, as a convicted felon, could neither own nor possess firearms. Notwithstanding this fact, she did identify photos of her and defendant in which photos defendant is wearing a security guard uniform along with a holster and a firearm.
 Also relevant on this issue is the testimony of a home health care nurse, Christine O'Brien, who treated Mrs. Moore. The nurse testified that on occasion Mrs. Moore got out of bed to run errands. However, nurse O'Brien did not begin treating Mrs. Moore until December 10, 1992.
 
 
 [2]
 The prosecutor in his opening statement also mentioned, without objection, the ammunition seized
 
 
 [3]
 Defendant stipulated to his felony record, and this stipulation was read to the jury early in the trial