**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Thomas Levoyes DAVIS, Defendant–
Appellant.**

**No. 00–1361.**

United States Court of Appeals,
Sixth Circuit.

Oct. 17, 2001.

Before GUY and MOORE, Circuit Judges; and HULL, District Judge.*

HULL, District Judge.

Defendant-appellant Thomas Levoyes Davis was charged in a four-count indictment with two counts of threatening the President of the United States (Counts One and Four) in violation of 18 U.S.C. § 871 and two counts of threatening to murder a United States Magistrate Judge. 18 U.S.C. § 115(a)(1)(B). A jury found Davis guilty on all counts and the district court denied his motion for a judgment of acquittal. The presentence investigation report calculated Davis's guideline sentencing range to be 46 to 57 months. The district court granted the government's

motion for an upward departure and sentenced him to 168 months of imprisonment. In appealing to this court, Davis challenges the sufficiency of the evidence with regard to Counts One and Four and the severity of his sentence. For the reasons which follow, we affirm.

While Davis was a state prisoner at a maximum security correctional facility in Ionia, Michigan, he filed a civil rights action which was ultimately tried by United States Magistrate Judge Marc L. Goldman. Judge Goldman directed a verdict for the defendant. After Judge Goldman had left his courtroom, Davis, enraged at the dismissal of his lawsuit, was heard by his correctional facility officers and by a Deputy U.S. Marshal making verbal threats against both the President and the Magistrate Judge. Counts One and Two of the indictment are based on these oral threats.

The challenged evidence with regard to Count One was that Davis was reported to have said, "...when I get out, I'm going to Washington, take care of the president" and also, "Hey, would you tell the president something, tell him I have something for him." Davis argued in support of his motion for acquittal, and argues again on appeal, that these statements are insufficient to constitute a willful threat as that term is utilized in 18 U.S.C. § 871.

In reviewing a conviction for sufficiency of the evidence, we review the evidence "in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The conviction will be upheld as long as "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

---

* The Honorable Thomas G. Hull, United States District Judge for the Eastern District of Tennessee, sitting by designation.

In *United States v. Vincent*, 681 F.2d 462, 464 (6th Cir.1982), this court made it clear that a defendant may be convicted of making a willful threat, in violation of § 871, even if he does not harbor any actual, subjective intent to carry out his threat. The statute requires only that a defendant intentionally make a statement in a context, or under such circumstances, that a reasonable person would foresee that the statement would be interpreted by those who heard it as a serious expression of intent to inflict bodily harm upon, or take the life of, the President. The government's proof with regard to the context of these statements was that they were made immediately after Davis had made much more explicit threats to blow up the magistrate judge's house and car and to "take out" his family. When the challenged statements are viewed in the context in which they were made, the court is satisfied that a reasonable person hearing these statements would interpret them as a serious expression of intent to harm the President.

About a week after this outburst, Davis wrote a letter reiterating his threat against Magistrate Judge Goldman. This letter was the basis for Count Three of the indictment.

Approximately six months later, Davis wrote another letter which gave rise to Count Four of the indictment. This letter, postmarked January 26, 1999, and mailed to the "Federal District Attorney" in care of the United States District Court in Flint, contains a list of questions including, "Can I kill the Demon in the White house?" The questions are followed by a "statement" which reads as follows:

> To: The United States of America, "Hear my voice Mr. President. This is my last warning from God and I hope that Bill Clinton would have just listened to the visions in which they came from above."

I. Vision.
Thus saith the King of Kings, William J. Clinton is going to *die* according to *Roman 8:13.*

II. Vision
Boldness is the wicked and sinners are made Clean through God the Father, But December 25th 1999 in this Time will be the Time when God will appear in The Spirit in The White House at 11:40 p.m. and you will also see me as well a messenger of God.

Personal Holy regards, Thomas Davis # 212119

Dated: January 25th, 1999

[Government exhibit 20].

While it could be argued that this letter, standing alone, would not be taken as a serious threat, particularly in light of the pseudo-biblical tone and the fact that it was mailed *after* the date specified in Vision II, the evidence of context is again determinative.

The United States offered other mailings from Davis to the federal court in Flint including a hand-written warrant for his own arrest for threatening Judge Goldman and President Clinton [Government exhibit 21]; a hand-written "affidavit" in which Davis pleads guilty to the charge of threatening the President and advises that, if he gets out of prison without treatment, he will carry out his threats and will kill the President [Government exhibit 22]; and a hand-written "complaint" in which he charges himself with, among other things, sending threatening letters to the President. [Government exhibit 23]. In another letter, also sent to the United States District Court in Flint, Michigan, Davis states, in part,

> Mr. President, Honorable Judges,
> "I must take your life, As of God's will of honor!" And I obey Jesus Christ!!! "If you don't charge me then people will

Die when I get out, so help me or you'll Die"!

Respectfully yours, Satan, Thomas Davis # 212119

[Government exhibit 19].

■ Once again, when the letter giving rise to Count Four is viewed in conjunction with Davis's other mailings, this court is satisfied that a reasonable person would interpret it as a serious threat to harm the President of the United States. Accordingly, we find no error in the district court's denial of a judgment of acquittal and affirm his convictions on Counts One and Four.

Finally, Davis challenges the extent of the district court's upward departure from his guideline range of 46 to 57 months and the fact that it determined to sentence him to 168 months of incarceration without structuring its departure in accordance with U.S.S.G. § 4A1.3.

In reviewing a district court's departure from the Guidelines, this court employs a three-pronged test. First we consider whether the circumstances of the case are sufficiently unusual to warrant a departure. Second we determine whether the circumstances that justify a departure actually exist. Finally, we determine whether the degree or range of departure was reasonable. *United States v. Little*, 61 F.3d 450, 452–53 (6th Cir.1995).

With regard to the first two prongs of the test, Davis concedes that there are facts and circumstances which warrant an upward departure. His argument is confined to the reasonableness or extent of the departure selected by the district court. "Reasonableness" is a flexible standard which involves what is essentially a judgment call. A reviewing court must, therefore, give deference to the trier of fact's superior feel for the case. *Id.* at 453, citing *United States v. Thomas*, 24 F.3d 829, 832 (6th Cir.1994).

The United States had moved for an upward departure to a term of 20 years (five years on each of the four counts to run consecutively). It argued that Davis's criminal history significantly understated his likelihood for recidivism and that U.S.S.G. § 2A6.1 did not take into consideration the fact that it was the President of the United States being threatened. In support of its motion, the government filed records of Davis's 220 major misconduct citations issued by the Michigan Department of Corrections during his current confinement. It also cited seven prior convictions that had not been counted in Davis's criminal history score and advised the court that he had a criminal sexual conduct charge pending. The main thrust of the government's argument at the sentencing hearing was that Davis was a menace to public officials and society as a whole; that he was highly unlikely to be rehabilitated; and that he should be kept behind bars as long as possible.

In reaching a sentence of fourteen years, the district court explicitly found that Mr. Davis's criminal history category of four significantly under-represented his prior criminal conduct and his likelihood of recidivism. It described him as a "predator and an overall danger to society." The district court did not undertake a step-by-step examination of the higher criminal history categories and their guideline ranges, although it is clear from the sentence selected that even criminal history category six would have been deemed inadequate. It sentenced Davis to consecutive terms of sixty months on Counts One and Four and consecutive terms of twenty four months on Counts Two and Three, to run consecutively to the terms for Counts One and Four and to his unexpired term of imprisonment on state charges. This incarceration is to be followed by four, concurrent three-year periods of supervised release.

■ Under all of the circumstances, we find that the district court's decision to depart upward to 14 years was not an abuse of discretion. And although it did not explicitly consider the intermediate levels of departure as required by *United States v. Kennedy*, 893 F.2d 825 (6th Cir.1990), neither the Guidelines nor the law of this circuit require a mechanistic recitation of a court's rejection of lower guideline ranges. *Little*, 61 F.3d at 454. Reversing the sentencing on this basis to enforce step-by-step consideration of possible increases in Davis's criminal history category would not be likely to produce a different result and would definitely elevate form above substance. *See, United States v. Barber*, 200 F.3d 908, 914 (6th Cir.2000).