**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Vincent A. CHINGMAN, Defendant–**
**Appellant.**

**No. 02–1193.**

United States Court of Appeals,
Sixth Circuit.

Feb. 4, 2004.

Patricia G. Gaedeke, U.S. Attorney's Office, Detroit, MI, for Plaintiff–Appellee.

Vincent A. Chingman, Milan, MI, Robert J. Dunn, Bay City, MI, for Defendant–Appellant.

Before COLE and CLAY, Circuit Judges; and COLLIER, District Judge.*

CLAY, Circuit Judge.

Defendant. Vincent A. Chingman, appeals the sentence in connection with the judgment entered by the United States District Court for the Eastern District of Michigan on January 25, 2002, after Defendant was found guilty of possession with intent to distribute 500 or more grams of cocaine after a felony drug conviction, in violation of 21 U.S.C. § 841(a)(1). For the reasons set forth below, we **AFFIRM** the district court.

## BACKGROUND

### *Procedural History*

In April of 2001, Defendant was indicted by a federal grand jury on three counts: (1) possession with intent to distribute 500 grams or more of cocaine; (2) possession with intent to distribute a quantity of marijuana; and (3) possession of firearms, in and affecting commerce, by a person having been convicted of one or more crimes punishable for a term exceeding one year. On January 25, 2002, the district court entered judgment, convicting Defendant of the first count of the indictment, to which Defendant pleaded guilty, and dismissing

---

* The Honorable Curtis L. Collier. United States District Judge for the Eastern District of Tennessee, sitting by designation.

the other two counts, on the government's motion. Defendant was sentenced to 262 months (i.e., more than twenty-one-and-a-half years) in prison.

Defendant filed a timely notice of appeal.

### *Substantive Facts*

The Presentence Investigation Report sets forth the basic facts. "On January 16, 2001, agents from the local Alcohol, Tobacco, and Firearms (ATF) office received a call from Dick Williams' gun shop in Saginaw. Michigan. Agents were advised that VINCENT A. CHINGMAN had dropped off a firearm for repair/replacement of a buttstock. The gun shop questioned the legality of the weapon." (J.A. at 76.) The employees at the gun shop identified Petitioner in a computer-generated line-up. The weapon that Petitioner dropped off was determined to be a machine gun (a MAK90, 7.62 × 39 mm rifle). "Due to the fact that MR. CHINGMAN is prohibited from possessing a firearm based upon his prior felony record, and that the weapon involved was a machine gun, the weapon was seized and authorities obtained a search warrant for MR. CHINGMAN's home." *Id.*

In the home in Saginaw, Michigan where Petitioner, his girlfriend and their four children resided, police found a shotgun with shells, as well as other ammunition. In this home, police also found drugs. There were six bags containing marijuana in quantities of 352.5 grams, 334.4 grams, 441.6 grams, 442.3 grams, 440.9 grams, and 447.1 grams, as well as a small amount of marijuana that was found along with a handheld scale. There were also, in separate locations within the house, quantities of cocaine of 27.5 grams and 498.4 grams. As stated in the Presentence Investigation Report:

In total, 2,160.4 grams of marijuana, and 537.2 grams of cocaine were found in MR. CHINGMAN's home. This would convert to 109.6 kilograms of marijuana. In a signed confession given to agents shortly after the execution of the search warrant, MR. CHINGMAN stated that he purchased five guns for $300.00 during the summer of 2000. He sold three shotguns and kept the MAK90 and the shotgun which were found in his home. He stated that the 18 ounces of cocaine found in his home belonged to him as did the four to five pounds of marijuana. MR. CHINGMAN stated that he used the scales that were found in the home to measure quantities of cocaine and marijuana. He stated that he sold the cocaine in ounces and the marijuana in pounds.

During the presentence interview MR. CHINGMAN admitted he was dealing marijuana, cocaine, and guns. His intent was to sell the drugs that were found in his home.

(J.A. at 77.)

### DISCUSSION

On appeal, Petitioner contests his sentence based upon ineffective assistance of counsel and error in punishing Petitioner twice for a prior offense. We take these issues in order.

### I.

Petitioner first argues that the district court erred in failing to *sua sponte* remove defense counsel from the case.

This Court reviews *de novo* a claim of ineffective counsel, though pertinent factual findings are reviewed only for clear error. *United States v. Jackson,* 181 F.3d 740, 744 (6th Cir.1999) ("We ... review *de novo* claims of ineffective assistance of counsel, since the analysis of such a claim

requires a consideration of mixed questions of law and fact. *See Blackburn v. Foltz*, 828 F.2d 1177, 1181 (6th Cir.1987). Any findings of fact pertinent to the ineffective assistance of counsel inquiry are subject to a 'clearly erroneous' standard of review. *See id."*).

To merit relief for constitutionally deficient counsel, Defendant must demonstrate that both prongs of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) are satisfied. Defendant must show first that counsel failed to meet an objective standard of reasonableness in performing his or her professional responsibility—this on matters of trial strategy, Defendant must overcome the presumption that the challenged action was sound strategy. *Bowling v. Parker*, 344 F.3d 487, 504 (6th Cir.2003). Secondly, Defendant must demonstrate prejudice, i.e., that with adequate counsel there was a "reasonable probability" of a different outcome—which means that there is a probability high enough to undermine confidence in the outcome. *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *Bowling v. Parker*, 344 F.3d at 504.

■ Generally, claims of ineffective assistance of counsel may not be raised for the first time on direct appeal, although in certain instances such claims may be allowed. As stated in *United States v. Tucker*,

> As a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations. The customary procedure followed in this situation by the various circuits is to permit the defendant to raise his ineffectiveness of counsel claim in a proper post-conviction proceeding under 28 U.S.C. § 2255. When, however, the record is adequate to assess the merits of the defendant's allegations, some courts will consider them.

90 F.3d 1135, 1143 (6th Cir.1996) (quoting *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir.1990)) (citation omitted). *See also United States v. Jackson*, 181 F.3d 740, 747 (6th Cir.1999) ("One reason for this rule [against addressing claims of ineffective counsel raised for the first time on direct appeal] is that claims of ineffective assistance of counsel require a factual finding of prejudice, and appellate courts are not well-equipped to undertake the resolution of factual issues.") (citations omitted). In *Tucker* this Court stated. "The threshold inquiry ... is whether the record before this court provides an adequate basis for resolution of [the] claims." 919 F.2d at 1143.

Petitioner acknowledges the general rule against hearing claims of ineffective counsel for the first time on appeal, but Petitioner's counsel on appeal argues that this is an extreme case. Petitioner argues. "It certainly became plain to the trial court upon reviewing the objections to the Pre–Sentence Report filed by Defendant's counsel that he fundamentally did not understand Federal sentencing laws and procedures and especially the career offender provisions of [U.S. Sentencing Guidelines Manual § ]4B1.1 so critically important to his client." (Petitioner's Brief at 11.)

■ None of Petitioner's criticisms of the trial counsel relate to the actual plea; rather, all of Petitioner's criticisms regard sentencing.[1] Thus, the conviction is not in

---

1. In fact, Petitioner admits that the underlying conviction was not attributable to the alleged deficiencies of counsel, stating. "I cannot argue at this time that Defendant would not likely have been convicted had he

question-the only relief requested would be re-sentencing. Re-sentencing is not warranted because Petitioner does not meet *Strickland*'s required prongs.

We need not determine whether trial counsel's performance fell below an objective standard of competence, because Petitioner clearly fails to meet the second required prong of *Strickland*. Far from demonstrating that there was a "reasonable probability" that the alleged errors of Petitioner's former counsel led to a worse result than what would have occurred with competent counsel. Petitioner alleges errors which could not possibly have prejudiced Defendant. Petitioner states. "counsel indicated that Defendant claimed he was not on probation after 1–1–01. No documentation of this claim was presented by defense counsel and in fact the Defendant was on probation until well past January 1, 2001." (Petitioner's Brief at 12.) But the relevant rule is that two points are added to the Offense Level—meaning a more lengthy sentence—if the offense was committed while Defendant was on probation.[2] The offense for which Defendant was convicted was committed on January 16, 2001. Thus, stating that Defendant was on probation past January 1, 2001—as asserted on appeal—could only have hindered Defendant's argument for a shorter sentence.

Likewise, Petitioner argues that former counsel made an "erroneous claim that Defendant was in criminal history category ... IV." (Petitioner's Brief at 12.) It was erroneous to argue that Defendant was in Category IV, because, as Petitioner states, he was actually in Category VI. But, for a given Offense Level, sentencing is more severe for Category VI criminals than for

Category IV. Thus, former counsel's error could not possibly have lengthened Petitioner's sentence.

Also, on appeal, Petitioner criticizes trial counsel's argument that Defendant was not a "career offender." Former counsel's argument was perhaps amateurish, in stating during the sentencing hearing, without any legal authority, that the career offender designation is "aimed at Purple Gang or Dillinger or something" and that unlike those individuals. Defendant "is a very friendly guy." (Petitioner's Brief at 16.) But Petitioner does not point to any better argument that former counsel could have made-and since "career offender" status carries with it lengthier sentencing, by virtue of automatically placing the offender under Category VI (*see* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 4B1.1(b)), former counsel's goal of showing that Defendant was not a "career offender" was understandable. There is no possibility that the "career offender" argument made by former counsel resulted in a lengthier sentence for Defendant.

On the merits, then, Petitioner's claim would clearly fail. The only question is whether the ineffective assistance of counsel claim should even reach the merits. Because Defendant's alleged errors could not possibly have extended Defendant's sentence, the record is sufficient for a ruling on the merits on this claim. The claim is without merit.

## II.

■ Petitioner argues that, in determining the applicable offense level, the district court erred in counting a prior offense twice.

---

been represented by confident counsel." (Petitioner's Brief at 9.)

**2.** Two points are added because "the defendant committed the instant offense while under any criminal justice sentence, including probation...." U.S.S.G. § 4A1.1(d).

This Court reviews a district court's factual findings at sentencing for clear error and reviews a district court's legal conclusions regarding the application of the sentencing guidelines *de novo.* *United States v. Miggins,* 302 F.3d 384, 390 (6th Cir. 2002).

The applicable sentencing table, in U.S.S.G., Chapter Five, Part A. has Category Level (from I to VI) on the horizontal axis and has Offense Level (from 1 to 43) on the vertical axis.

Petitioner concedes that because he had two prior felony convictions for controlled substance offenses, he was a "career offender" within the meaning of U.S.S.G. § 4B1.1(a). This means that in the sentencing table, on the horizontal axis, he fell under Category VI. U.S.S.G. § 4B1.1(b) ("A career offender's criminal history category in every case under this subsection shall be Category VI."). Petitioner also concedes that he would have fallen under Category VI on the basis of the fourteen points[3] attributed to him for past felonies and misdemeanors.

Petitioner states that he "would normally have" a base offense level of 34 (Petitioner's Brief at 18), which would be computed by taking Offense Statutory Maximum, i.e., the statutory maximum sentence allowed for the present offense—in this case, imprisonment for life, 21 U.S.C. § 841(b)(1)(B)—then locating the corresponding offense level[4] (which is offense level 37, for crimes whose maximum sentence is life imprisonment, U.S.S.G. § 4B1.1(b)), and then subtracting

three points for the plea, which qualifies under U.S.S.G. § 3E1.1 for acceptance of responsibility. U.S.S.G. § 4B1.1 (footnote, stating, "If an adjustment from § 3E1.1 (Acceptance of Responsibility) applies, decrease the offense level by the number of levels corresponding to that adjustment."): J.A. at 79 (granting a three-point reduction).

But Petitioner contests the use of base offense level of 34 in the present case, because a prior offense was used to increase his sentence twice. In the calculation of the offense level, Petitioner's prior offense was counted, since 21 U.S.C. § 841(b)(1)(B) states, "If any person commits such a violation[5] after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment. . . ." 21 U.S.C. § 841(b)(1)(B). The same prior offense was also needed to establish Petitioner's Category VI level of criminal history.

Petitioner argues that it was improper to punish him twice for the same prior felony drug offense. Petitioner alleges that punishing him more than once for the same offense violated *United States v. Romano,* 970 F.2d 164, 167 (6th Cir.1992) ("It would violate established principles of lenity and due process to enhance defendant's sentence again for the same conduct under § 2F1.1(b)(2)."). If the prior offense had not been counted, then the maximum prison term would have been forty years. 21 U.S.C. § 841(b)(1)(B) ("such person shall

---

**3.** Thirteen points or more place a defendant in Category VI. *See, e.g., United States v. Little,* 61 F.3d 450, 456 (6th Cir.1995) ("the 13 points needed to be placed in Category VI").

**4.** For every Offense Statutory Maximum, there corresponds an offense level applicable to a career offender, as set forth in U.S.S.G. § 4B1.1(b).

**5.** Defendant's conviction was for possession with intent to distribute more than 500 grams of cocaine, which was a violation of 21 U.S.C. § 841(b)(1)(B), through the violation of 21 U.S.C. § 841(b)(1)(B)(ii).

be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years"). Under the career offender provisions, the forty-year maximum period would have corresponded to a base offense level of 34 (U.S.S.G. § 4B1.1(b)), which would then have been reduced by three points for acceptance of responsibility, lowering the offense level to 31.

Yet Petitioner's argument lacks merit. *Romano* involved different circumstances and has been abrogated. *Romano* prohibited punishing twice for the offense charged, not for prior convictions. 970 F.2d at 166–67. Also, *Romano*'s holding has been abrogated—as this Court stated in *United States v. Cobleigh,*

> effective November 1, 1993, the Sentencing Guidelines were amended as follows:
>
>> Absent an instruction to the contrary, the adjustments from different guideline sections are applied cumulatively. For example, the adjustments from § 2F1.1(b)(2) and § 3B1.1 are applied cumulatively.
>
> The Sentencing Commission's regulations have thus abrogated the holdings of *Romano* and *[United States v.] Chichy[,* 1 F.3d 1501, 1505–07 (6th Cir. 1993)]. *See Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993) ("commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline").

75 F.3d 242, 251 (6th Cir.1996).

The present case is governed by U.S.S.G. § 4B1.1, Application Note 2, which defines the Offense Statutory Maximum that is used to determine the offense level:

> "Offense Statutory Maximum," for the purposes of this guideline, refers to the maximum term of imprisonment authorized for the offense of conviction that is a crime of violence or controlled substance offense, *including any increase in that maximum term under a sentencing enhancement provision that applies because of the defendant's prior criminal record (such sentencing enhancement provisions are contained, for example, in 21 U.S.C. § 841(b)(1)(A), (B), (C), and (D)).* For example, in a case in which the statutory maximum term of imprisonment under 21 U.S.C. § 841(b)(1)(C) is increased from twenty years to thirty years because the defendant has one or more qualifying prior drug convictions, the "Offense Statutory Maximum" for that defendant for the purposes of this guideline is thirty years and not twenty years. If more than one count of conviction is of a crime of violence or controlled substance offense, use the maximum authorized term of imprisonment for the count that has the greatest offense statutory maximum.

(emphasis added). Through Amendment 506, the United States Sentencing Commission had amended Application Note 2 to prohibit the Offense Statutory Maximum from including enhancements relating to prior offenses-but Amendment 506 was held to be invalid in *United States v. LaBonte,* 520 U.S. 751, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997). *See also United States v. Branham,* 97 F.3d 835 (6th Cir. 1996). Under U.S.S.G. § 4B1.1. Application Note 2, enhancements arising from prior convictions are included in the Offense Statutory Maximum that determines the offense level.

The applicable sentencing terms for Defendant were Category VI and offense level 34. For these terms, the minimum sentence is 262 months, and the maximum is 327 months. U.S.S.G., Chapter Five, Part

A, Sentencing Table. Based upon this range, Defendant was sentenced to 262 months. There was no error in this case.

## CONCLUSION

For the aforementioned reasons, we **AFFIRM** the judgment of the district court.